## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| MARLENE CLARK, | : | |
| Plaintiff, | : | |
| | | Case No. 3:13cv00181 |
| vs. | : | |
| | | District Judge Thomas M. Rose |
| CAROLYN W. COLVIN, | : | Chief Magistrate Judge Sharon L. Ovington |
| Acting Commissioner of the | | |
| Social Security Administration, | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATIONS[1]

### I.    Introduction

Plaintiff Marlene Clark has myriad health problems involving, in part, her right shoulder, cervical spine, right knee, carpal tunnel syndrome, obesity, depression, and diabetes mellitus.  On September 12, 2008, she applied for Disability Insurance Benefits and Supplemental Security Income, asserting she was unable to work and therefore under a benefits-qualifying disability beginning on December 31, 2006.  The Social Security Administration found otherwise and denied her applications under both programs.

The denials came mainly through Administrative Law Judge Amelia G. Lombardo's conclusion that Clark could still perform her past job (past relevant work) as a housekeeper.

---

[1] Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

This, in turn, meant that under the Social Security Act, Clark was not under a disability and, therefore, not eligible for the benefits she sought. *See* 42 U.S.C. §§423(d)(2)(A), 1382c(a)(3)(B).

Clark brings the present case challenging ALJ Lombardo's non-disability decision. The case is before the Court upon Clark's Statement of Errors (Doc. #8), the Commissioner's Memorandum in Opposition (Doc. #10), Clark's Reply (Doc. #11), the administrative record (Doc. #6), and the record as a whole.

Clark seeks an Order reversing the ALJ's decision and remanding this case to the Social Security Administration for payment of benefits, rather than for further proceedings. The Commissioner seeks an Order affirming the ALJ's decision.

This Court has jurisdiction to review the administrative denial of Clark's applications for benefits. *See* 42 U.S.C. §§ 405(g), 1383(c)(3).

## II.   **Background**

### A.   **Clark Age, Vocational Background, and Testimony**

On Clark's asserted disability onset date (December 31, 2006), she was 49 years old. She turned age 50 in early 2007. On the dates ALJ Lombardo held a hearing and issued her non-disability decision, Clark was 53 years old. Given her ages at those times, the Social Security regulations placed her in the category of a person "closely approaching advanced age." *See* 20 C.F.R. §§404.1563(d); 416.963(d).[2] Clark attended high school

---

[2]   The remaining citations will identify the pertinent DIB Regulations with full knowledge of the corresponding SSI/DIB Regulations.

through the 11th grade.  Her past jobs include work as a nurse's aide and housekeeper.

During the ALJ's hearing, Clark testified that she was unable to work due to her physical health problems.  She explained, "I have a lot of swelling in my feet and my legs.  And my right knee, I fell on it and it's hard for me to walk with that, also with the swelling.  I have carpal tunnel.  That affects my grabbing."  (Doc. #6, PageID at 73).  Her carpal tunnel syndrome has become worse over time.  By the time of the ALJ's hearing, Clark had it in both hands.  Her fingers will "go numb" with little activity.  For example, if she tries to write her fingers will go numb.  *Id*., PageID at 76.  She estimates that she can lift five pounds, using both hands.

Clark testified that she feels pain in her legs, knee, right shoulder, neck, arms, and "whole right side."  *Id*., PageID at 75.  There is a burning sensation in her legs.  She stated that she could not perform her past job, explaining, "The walking and lifting I cannot do.  I cannot do any of that.  I swell too much for the walking.  The lifting, my arms could not take it.  I could not do that.  I can't grab and hold, not like I used to."  *Id*., PageID at 80.  During the year before the ALJ's hearing, Clark also started to experience tingling in her left arm.  She testified, "Like if I lay my arm down I get the tingling, but if I put it up it doesn't tingle.  He wants to put like a sock in between my arm and put an ACE band around it so that would relieve the tingling."  *Id*.  She has tried this but the sock makes the tingling worse, and her arm swells.  So she just rubs it.  She describes it as "an all day thing," and she notes, "When it starts tingling I just rub it.  It's very irritating."  *Id*., PageID

3

at 81.

As to her knees, her right knee is worse than her left.  She stated, "It does a lot of
popping and it's very irritating and it hurts.  It's like a nagging pain." *Id*.  The pain in her
right knee continues all day; she noted, "it just nags."  (Doc. #6, PageID at 81).

Clark's medications cause her to sleep a lot, and she feels "fatigued, tired." *Id*.  She
testified that she naps "all day long"; every time she sits down she nods off. *Id*., PageID at
81-82.  Twice a day, she usually lies in bed and props her legs up on a pillow.  She then
falls asleep for about two hours.  After she wakes, she moves to a chair where she sits and
props her legs on a stool.  But she gets "too restless" and will sit "not even two hours." *Id*.,
PageID at 82.  She added, "I have to prop my feet up every time I sit down." *Id*.  She is
able to walk from her couch to her door but must "stop and pause most of the time." *Id*.,
PageID at 75.  She can stand 20 minutes at a time.

At the time of the ALJ's hearing in October 2010, Clark was five feet four inches
tall and weighed about 273 pounds.

Clark also has emotional difficulties.  She becomes "very irritable" and does not
like being around anybody. *Id*., PageID at 83.  She gets irritated because she's in pain. *Id*.,
PageID at 76.  She also testified that she has symptoms of depression, explaining, "I don't
feel like being bothered with nobody.  I don't like talking to nobody if they call me on the
phone.  Sometimes I don't even want to go outside.  I just want to be in a room by myself."
*Id*., PageID at 83.  She has not sought mental-health treatment because she does not have

4

medical insurance.

Clark's chores or daily activities consist of doing a few dishes, trying to run a vacuum but only a little at a time, and dressing and grooming herself.  She goes grocery shopping once a month, but her nephew goes with her because he can lift the groceries. She does not have any hobbies.  She does not leave her house "that much" but does visit her grandchildren.  When she is irritable, she does not like to be around others.

B.    **Medical Evidence and Opinions**

**1.**

**Dr. Ahmed**

On July 2, 2007, Clark's primary care physician, Imtiaz Ahmed, MD, wrote a brief note stating that Clark has multiple medical problems and "may not be able to work for now."  (Doc. #6, PageID at 330).  On July 17, 2007, he assessed Clark's physical functioning for the Ohio Department of Job and Family Services.  *Id*., PageID at 328-29. He noted that Clark had tenderness and pain in her right knee, right knee arthritis, obesity, and foot edema.  *Id*., PageID at 329.   He opined that Clark can stand or walk one to two hours out of eight and can sit three to four hours out of eight.  *Id*., PageID at 328.  He noted that Clark's ability to lift was limited to lifting between 11 and 20 pounds and her ability to push, pull, bend, and perform repetitive foot movements were all markedly impaired.  In support of these opinions, Dr. Ahmed relied on Clark's right-knee pain and obesity.  *Id*.  Ultimately, Dr. Ahmed opined, by checking boxes, that Clark is "unemployable" for nine to eleven months.  *Id*.

5

In December 2008, Dr. Ahmed completed a second assessment of Clark's functioning for the Ohio Department of Job and Family Services. (Doc. #6, PageID at 454-55). Dr. Ahmed checked boxes in the form indicating that Clark was "unemployable" for 12 months or more. According to Dr. Ahmed, Clark was limited to standing or walking one to two hours out of eight and sitting for three to four hours; she could lift 11 to 20 pounds frequently or occasionally. Dr. Ahmed believed that Clark was markedly limited in several abilities – pushing/pulling, bending, and repetitive foot movements – as well as being markedly limited in reaching. Dr. Ahmed noted that Clark experienced pain and tenderness in her right knee and right shoulder as well as pedal edema.

## 2.
## Examiners:  Drs. Smith and Brown

In September 2007, William Smith, MD, examined Clark at the request of the Ohio Bureau of Disability Determinations. *Id*., PageID at 354-60. Clark's chief complaints to Dr. Smith were "pain in the neck and shoulder and swelling of her ankles." *Id*, PageID at 354. Upon examination, he found Clark positive for reduced range of motion in her cervical spine and right-shoulder. Dr. Smith also found muscle spasm in Clark's right shoulder muscle, and her reflexes were absent in both ankles. *Id*., PageID at 355-58. Dr. Smith diagnosed Clark with chronic right shoulder capsulitis, cervical spondylosis at C5-6, hypertension, obesity, and post-traumatic pain in both knees. *Id*., PageID at 356. Ultimately, Dr. Smith opined that Clark "has impairment with respect to standing, walking, lifting, and carrying objects." *Id*.

6

In June 2009, Judith Brown, MD, examined Clark for the Ohio Bureau of Disability Determinations.  (Doc. #6, PageID at 417-25).  Dr. Brown noted that Clark was morbidly obese at five feet four inches tall and 250 pounds.  Clark walked with a "normal gait, which is not unsteady, lurching or unpredictable....  She appears stable at station and comfortable in the supine and sitting positions."  *Id*., PageID at 419.  Dr. Brown found tenderness in Clark's right paraspinal muscle.  *Id*.  Dr. Brown further reported:

> Exam of right shoulder reveals tenderness over the right trapezius muscle.  There is no bony tenderness noted.  There is no crepitus, laxity, redness or warmth....  The elbows are tender bilaterally over the medial epicondyle.  Tinel's sign is positive bilaterally.  There is no redness or warmth noted.  Exam of wrists are nontender.  There is no redness, warmth or swelling bilaterally.  There are no nodules.
>
> Examination of the hands reveals no tenderness, redness or swelling.  There is thenar atrophy bilaterally and Tinel's sign is positive bilaterally.  She is able to make a fist bilaterally.  There are no Heberden or Bouchard's nodes.
>
> Examination of the right knee reveals tenderness over the medial aspect.  There is a small effusion noted.  There is some soft tissue swelling noted medially as well.  There is no crepitus, laxity, redness or warmth.....

*Id*., PageID at 420.

When Dr. Brown examined Clark neurologically, she observed, "decreased pinprick and light touch sensation noted over the right thumb and the dorsal and medial aspects of the right forearm...."  *Id*.

Dr. Brown assessed Clark as having pedal edema, carpal tunnel syndrom, ulnar neuropathy, chronic neck and right shoulder pain, and chronic right knee pain.  In her summary, Dr. Brown opined, "The claimant's ability to perform work-related activities

7

such as bending, stooping, lifting, walking, crawling, squatting, carrying and traveling as well as pushing and pulling heavy objects appears to be at least mildly impaired by the findings noted."  (Doc. #6, PageID at 421).

**3.**
**Record Reviewers: Drs. Hill, McCloud, and Sargone**

In October 2007, nontreating physician Cindi Hill, MD, reviewed the first seven exhibits in the administrative record and offered an opinion about Clark's functional abilities.  (Doc. #6, PageID at 385-92).  Dr. Hill opined that Clark can lift up to 20 pounds occasionally and 10 pounds frequently, and she can sit, stand, or walk for about six hours out of eight.  *Id*., PageID at 386.  Dr. Hill believed that Clark can occasionally stoop, kneel, crouch, or crawl.  *Id*., PageID at 387.  Dr. Hill further found that Clark's ability to reach in all directions (including overhead) was limited, explaining, "There is some diminished [range of motion] of right shoulder, limiting reaching to frequent."  *Id*., PageID at 388.

Jerry McCloud, MD reviewed Clark's records on February 2009 at the request of the Ohio Bureau of Disability Determinations.  (Doc. #6, PageID at 402-09).  Dr. McCloud had the benefit of five additional pages of medical records, reflecting her five examination appointments with Dr. Ahmed from December of 2007 through December of 2008.  *Id*., PageID at 393-97.  Dr. McCloud's conclusions were similar to Dr. Hill's.  Dr. McCloud opined that Clark can lift up to 20 pounds occasionally and 10 pounds frequently, and she can sit, stand, or walk for about six hours out of eight.  *Id*., PageID at 403.  Dr. McCloud believed that Clark can occasionally climb ramps or stairs but can never climb ladders,

8

ropes, or scaffolds.  *Id.*, PageID at 404.  She could occasionally balance, stoop, kneel, crouch, or crawl.  *Id*.  Dr. McCloud further found that Clark's ability to reach in all directions (including overhead) was limited, explaining "Overhead reaching on the right is limited to frequently.  *Id.*, PageID at 405.  Dr. McCloud also wrote, "[C]laimant is partially credible.  Weight is given to the attending physician, his findings and conclusions."  *Id.*, PageID at 409.  Presumably, the ALJ was referring to Dr. Ahmed.

In July 2009, Arthur Sargone, MD, examined the record for the Ohio Bureau of Disability Determinations.  *Id.*, PageID at 428-35.  He opined that Clark could occasionally lift 20 pounds and frequently lift 10 pounds; stand and/or walk about six hours out of eight; sit about six hours out of eight; occasionally climb ramp/stairs but never climb ladders, ropes, or scaffolds; and occasionally balance, stoop, kneel, crouch, or crawl.  *Id.*, PageID at 429-30.  Dr. Sargone believed that Clark's ability to reach was limited to frequently on the right, and her ability to perform fine manipulation was limited bilaterally to occasionally.  *Id.*, PageID at 431.  And, according to Dr. Sargone, Clark's "allegations are considered credible in nature and consistent with the MER [medical evidence of record]."  *Id.*, PageID at 433.

## 4.
## Additional Evidence

An x-ray report dated June 16, 2009, written by Eli Rubenstein, MD, contains two diagnostic impressions: normal right knee and normal right shoulder.  *Id.*, PageID at 426.  An electromyographic examination on June 26, 2009 revealed mild to moderate bilateral

carpal tunnel syndrome, in the right somewhat more than the left, "with prolongation of motor and sensory distal latencies of both Median nerves; both Median transcarpal latencies are prolonged. Mild neurogenic EMG changes are seen in both Thenar muscles." *Id*., PageID at 456. This exam also revealed early left ulnar nerve entrapment in Clark's elbow "with slight reduction of Ulnar nerve conduction velocity across elbow." *Id*., PageID at 456.

Clark began seeing Thomas W. Ericksen, MD, in January 2010. (Doc. #6, PageID at 464-67. One month later, Dr. Ericksen diagnosed Clark with right-knee pain, insomnia, and hypertension. *Id*., PageID at 462.

In May 2014, Clark underwent a right-shoulder MRI, which produced four diagnostic impressions: (1) mild tendinopathy of the supraspinatus with no focal rotator cuff tear; (2) mild degenerative change of the acromioclavicular joint; and (3) mild tendinopathy of the intra-articular portion of the biceps tendon; and (4) no acute bony abnormality. *Id*., PageID at 501. A MRI of Clark's right knee on the same date showed a longitudinal tear in the medial meniscus, moderate chondromalcia in the medial compartment, but no acute ligament tear. *Id*., PageID at 504. The MRI also revealed a ganglion cyst and trace joint effusion. *Id*. Clark also underwent a MRI of her cervical spine, again on the same date, showing "mild to moderate central narrowing at C5-6 related to a broad-based disc osteophyte complex and minimal grade 1 retrolisthesis of C5 on C6. The disc osteophyte complex extends to the foraminal region bilaterally with

moderately severe right and moderate left foraminal narrowing." (Doc. #6, PageID at

506). The report also noted no focal disc herniation or central or foraminal narrowing at

the remaining levels. *Id*.

**III.   Benefit Determinations**

      **A.   "Disability" Defined**

To be eligible for Disability Insurance Benefits (DIB) or Supplemental Security

Income (SSI) a claimant must be under a "disability" within the definition of the Social

Security Act. *See* 42 U.S.C. §§423(a), (d), 1382c(a). The definition of a "disability" is

essentially the same for both DIB and SSI. *See Bowen v. City of New York*, 476 U.S. 467,

469-70 (1986). A "disability" consists only of physical or mental impairments that are

both "medically determinable" and severe enough to prevent the applicant from (1)

performing his or her past job and (2) engaging in "substantial gainful activity" that is

available in the regional or national economies. *See Bowen*, 476 U.S. at 469-70.

      **B.   The ALJ's Decision**

Social Security Regulations required ALJ Lombardo to resolve Plaintiff's disability

applications through a five-Step sequential evaluation of the evidence. 20 C.F.R.

§404.1520(a)(4); *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). A dispositive

finding at any Step of the sequential evaluation terminates the ALJ's review. *Colvin*, 475

F.3d at 730. This occurred – in ALJ Lombardo's view – at Step four where she concluded

that Clark could perform her past relevant work as a housekeeper.

ALJ Lombardo's significant underlying findings began at Step two where she determined that Clark was under the severe impairments of "mild right shoulder tendinopathy, cervical spine osteoarthritis, a right knee meniscal tear, mild to moderate carpal tunnel syndrome, and obesity." (Doc. #6, PageID at 50). The ALJ further concluded that Clark's diabetes mellitus and depression did not constitute severe impairments. *Id.*, PageID at 50-53.

At Step three, ALJ Lombardo concluded that Clark did not have an impairment or combination of impairments that met or equaled the criteria in the Commissioner's Listing of Impairments. *Id.*, PageID at 53-54. At Step four, ALJ Lombardo concluded that Clark "has the residual functional capacity[3] to perform light work ... except that she can perform no more than occasional reaching on the right and no more than frequent fine and gross manipulation (fingering and handling)." *Id.*, PageID at 54 (footnote added).

These findings, together with the ALJ's finding that Clark could perform her past relevant work as a housekeeper, led the ALJ to ultimately conclude that Clark was not under a disability and not eligible for DIB or SSI.

## IV. **Judicial Review**

ALJ Lombardo's decision that Clark is not under a benefits-qualifying disability is subject to review in this Court along two lines: "whether the ALJ applied the correct legal

---

[3] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §404.1545(a); *see Howard v. Commissioner of Social Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

12

standards and whether the findings of the ALJ are supported by substantial evidence."

*Blakley v. Comm'r of Social Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *see Bowen v. Comm'r*

*of Social Sec.*, 478 F3d 742, 745-46 (6th Cir. 2007). Reviewing the ALJ's legal criteria for

correctness may result in reversal even if the record contains substantial evidence

supporting the ALJ's factual findings. *Rabbers v. Comm'r of Social Sec.*, 582 F.3d 647,

651 (6th Cir. 2009); *see Bowen*, 478 F3d at 746.

The substantial-evidence review does not ask whether the Court agrees or

disagrees with the ALJ's factual findings or whether the administrative record contains

evidence contrary to those factual findings. *Rogers v. Comm'r of Social Sec.*, 486

F.3d 234, 241 (6th Cir. 2007); *see Her v. Comm'r of Social. Sec.*, 203 F.3d 388, 389-90

(6th Cir. 1999). Instead, the ALJ's factual findings are upheld if the substantial-evidence

standard is met – that is, "if a 'reasonable mind might accept the relevant evidence as

adequate to support a conclusion.'" *Blakley*, 581 F.3d at 406 (quoting *Warner v. Comm'r*

*of Social Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of

"more than a scintilla of evidence but less than a preponderance..." *Rogers*, 486 F.3d at

241.

**V.** **Discussion**

    **A.** **The ALJ's Evaluation Of The Medical Source Opinions**

Clark contends that the evidence of record fails to support the ALJ's reasons for

rejecting the opinions of her longtime treating physician, Dr. Ahmed. Clark reasons, in

part, that Dr. Ahmed's opinions were consistent with and well supported by all the evidence of record, except for the opinions of the state agency's one-time reviewing consultants.  Clark asserts that those contrary assessments cannot stand alone to constitute substantial evidence supporting the ALJ's decision to not credit Dr. Ahmed's opinions. And, Clark argues that even if evidence supported the ALJ's reasons, the ALJ failed to continue to weigh Dr. Ahmed's opinions under the factors required by Social Security Regulations.

The treating physician rule, when applicable, requires the ALJ to place controlling weight on a treating physician's or treating psychologist's opinion rather than favoring the opinion of a nonexamining medical advisor or a one-time examining physician or psychologist or a medical advisor who testified before the ALJ.  *Blakley,* 581 F.3d at 406 (6th Cir. 2009); *see Wilson*, 378 F.3d at 544 (6th Cir. 2004).  A treating physician's opinion is given controlling weight only if it is both well supported by medically acceptable data and if it is not inconsistent with other substantial evidence of record.  *Id.*

"If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship and the frequency of the examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley,* 581 F.3d at 406 (citing *Wilson*, 378 F.3d at 544).

The Commissioner views non-treating medical sources "as highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act."  Social Security Ruling 96-6p, 1996 WL 374180 at *2.  Yet the Regulations do not permit an ALJ to automatically accept (or reject) the opinions of a non-treating medical source.  *See id*. at *2-*3.  The Regulations explain, "In deciding whether you are disabled, we will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive."  20 C.F.R. §404.1527(b).  To fulfill this promise, the Regulations require ALJs to evaluate non-treating medical source opinions under the factors set forth in §404.1527(d) including, at a minium, the factors of supportability, consistency, and specialization.  *See* 20 C.F.R. §404.1572(f); *see also* Ruling 96-6p at *2-*3.

The Commissioner contends that the ALJ did not err when rejecting Dr. Ahmed's opinions because the ALJ provided "good reasons" for the rejection and because substantial evidence supports the ALJ's "good reasons."  The Commissioner's contentions are correct.

The Regulations require ALJs to "always give good reasons ... for the weight [they] give your [a claimant's] treating source's opinion."  20 C.F.R. §404.1527(c)(2).  Social Security Ruling 96-2p, 1996 WL 374188 (July 2, 1996) echoes this mandate and further explains that an ALJ's decision "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in this case record, and must

15

be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id*., 1996 WL at *5. The good-reasons requirement is "a mandatory procedural protection ...." *Wilson*, 378 F.3d at 546.

The ALJ provided "good reasons" for discounting Dr. Ahmed's opinions in several ways. The ALJ pointed to Dr. Ahmed's opinion in July 2007 that Clark's physical limitations would last only nine to eleven months. (Doc. #6, PageID at 59, 328). To constitute a benefits-qualifying "disability," a claimant's medically determinable impairment must last, or be expected to last, a continuous period "of not less than twelve months." 20 C.F.R. §404.1505(a). Because Dr. Ahmed believed in July 2007 that Clark's physical impairments could be expected to last nine to eleven months, rather than twelve months or more, his July 2007 opinion <u>alone</u> tends to show only that Clark failed to meet the disability durational requirement at that time. The ALJ was therefore correct to the extent she did not fully credit Dr. Ahmed's July 2007 opinions. The ALJ also did not err when rejecting Dr. Ahmed's brief note, written on July 2, 2007, which stated, "[Clark] may not be able to work for now." (Doc. #6, PageID at 330). The mere possibility that Clark "may" not be capable of working "for now" is insufficient to show that she met the disability durational requirement at that time. In addition, when these two pieces of evidence provided by Dr. Ahmed in July 2007 are combined, they reinforce each other on the point that Clark's physical impairments had not then met the disability durational

16

requirement in July 2007.  The ALJ was therefore correct to the extent she did not credit the combination of Dr. Ahmed's July 2007 opinions.

Clark contends that Dr. Ahmed's July 2007 opinion in no way reasonably diminishes his later December 2008 opinion that Clark's limitations had persisted and were expected to last twelve months or more from then on.  Clark is correct to consider Dr. Ahmed's 2007 and 2008 opinions together, yet doing so does not reveal an error of law or lack of substantial evidence supporting the ALJ's decision to discount Dr. Ahmed's opinions.  The ALJ gave little weight to Dr. Ahmed's opinions because his assessments were "unsupported by objective findings in the record."  (Doc. #6, PageID at 59).  Dr. Ahmed's diagnoses alone are not enough to support his opinions; there must also be objective medical evidence to confirm the severity of the alleged symptoms arising from the diagnosed conditions.  *See Brown v. Comm'r of Soc. Sec*., 156 F.3d 1228 (6th Cir. 1998) ("The mere diagnosis of a condition says nothing about the severity of the condition."); *see also Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("The mere diagnosis of arthritis, of course, says nothing about the severity of the condition.); *Hill v. Comm'r of Soc. Sec.*, __Fed. App'x.__, 2014 WL 1257948 at *4 (6th Cir. Mar. 27, 2014) ("[D]isability is determined by the functional limitations imposed by a condition, not the mere diagnosis of it.").  The ALJ accurately noted that rather than providing references to supporting evidence, Dr. Ahmed only listed diagnoses, including right-shoulder pain, right-knee arthritis, edema, and obesity.  (Doc. #6, PageID at 59, 328, 455).  In response to the

17

question of "what observations and/or medical evidence led to [his] findings" about

Clark's functional limitations, Dr. Ahmed listed only right-knee pain and obesity on the

July 17, 2007 opinion, and he did not list any response on the December 10, 2008 opinion

(Doc. #6, PageID at 328, 455).  He did not reference any specific evidence, such as range

of motion studies, gait observation, muscle-strength testing, or x-rays to support his

opinions about the severity of Clark's limitations.  For these reasons, the record supports

the ALJ's conclusion that Dr. Ahmed's opinion was not due controlling weight under the

treating physician rule as it was not "well supported by medically acceptable clinical or

laboratory diagnostic techniques ...."  20 C.F.R. §404.1572(d)(2).  And, for the above

reasons, the record also supports the ALJ's conclusion that Dr. Ahmed's opinions were not

due "deferential weight ..." (Doc. #6, PageID at 59) under the "supportability" factor.  *See*

20 C.F.R. §404.1527(d)(3) ("The more a medical source presents relevant evidence to

support an opinion, particularly medical signs and laboratory findings, the more weight we

will give that opinion.").  Dr. Ahmed also neglected to provide a meaningful explanation

of his opinions either in July 2007 or in December 2008.  The Regulations explain, "The

better an explanation a source provides for an opinion, the more weight we will give that

opinion...."  *Id*.  The ALJ therefore properly discounted Dr. Ahmed's opinion under the

"supportability" factor.

       Dr. Ahmed's underlying treatment records are also devoid of information

supporting his opinions.  Notably, in his July 17, 2007 treatment note, Dr. Ahmed did not

18

indicate any abnormal objective findings besides blood pressure of 148/88, weight of 270 pounds, and tenderness in the bilateral knees. (Doc. #6, PageID at 321). There was only isolated mention of right-knee swelling. *Id*., PageID at 412. The ALJ also cited specific inconsistencies between the medical records and Dr. Ahmed's opinion, such as the fact that the underlying treatment notes infrequently documented right-shoulder tenderness and numbness and generally documented no more than trace edema. *Id*., Page ID at 59, 322-23, 394-95. The ALJ also considered the mild to moderate findings from Dr. Ahmed's examinations and the other physical examinations "as discussed above." *Id*., PageID at 59. The findings the ALJ "discussed above" included mild to moderate carpal tunnel syndrome based on electromyographic examination; examinations from Dr. Ericksen that showed normal range of motion in all joints with no warmth, erythema, or effusion, and normal muscle strength throughout; imaging studies of Clark's right knee, which revealed normal to moderate findings; mild findings on a MRI of Clark's right shoulder; and minimal findings on a cervical spine MRI. The ALJ also outlined Clark's treatment history in the portion of her opinion "discussed above," which included a 10-month gap between her last visit with Dr. Ahmed on March 5, 2009, when she was "doing ok," *id*., PageID at 412, until she established a new primary care relationship with Dr. Ericksen on January 4, 2010, *id*., PageID at 464. *Cf. Strong v. Soc. Sec. Admin*., 88 Fed. App'x. 841, 846 (6th Cir. 2004) ("In the ordinary course, when a claimant alleges pain so severe as to be disabling, there is a reasonable expectation that the claimant will seek examination or treatment. A failure to

19

do so may cast doubt on a claimant's assertions of disabling pain.").

In sum, substantial evidence supports the ALJ's reasons for not placing controlling or deferential weight, and instead placing "little weight," on Dr. Ahmed's opinions, and the ALJ's reasons for discounting Dr. Ahmed's opinions were "sufficiently specific to make clear to any subsequent reviewers ... the reasons for ..." discounting his opinions. *Wilson*, 378 F.3d at 544.  Consequently, the ALJ's decision satisfies the good-reasons requirement.

Clark further argues that the ALJ should not have given significant weight to the non-treating source opinions in this case because the opinions are inconsistent with each other.  However, all three state agency medical consultants consistently opined that Clark was not disabled in that she could perform a reduced range of light work.  (Doc. #6, PageID at 385-392, 402-409, 428-435).  Contrary to Clark's argument that the file contains "strange inconsistencies and/or contradictory findings," the state agency medical consultant opinions contain only minor variances regarding her abilities for reaching, fingering, and handling.  The ALJ properly addressed and resolved the variances in the state agency opinions, stating:

> The undersigned has included the limitation to no more than occasional overhead reaching on the right in consideration of the claimant's mild right shoulder tendinopathy.  The undersigned notes, however, that the record contains no support for the postural limitations arrived at by the [Ohio] BDD reviewing physicians….  Dr. Sargone's limitation to occasional fingering is also unsupported by the record.  Dr. Sargone indicated that he based this limitation on the consultative examiner's finding of decreased grip strength on the left with unreliable muscle testing on the right.  She also noted normal grasp, manipulation, pinch, and fine coordination abilities ….  Thus, the undersigned finds that the limitation to no more than frequent fine

20

and gross manipulation adequately accounts for the claimant's mild to
moderate carpal tunnel syndrome.

(Doc. #6, PageID at 58) (internal citations omitted).

The ALJ also cited specific findings when giving "significant weight" to the
opinions provided by the state agency medical consultants and found that their assessments
were "generally supported by objective findings upon examination and in the substantial
medical evidence of record." *Id*.  This constituted an application of the "consistency"
factor, which provides, "Generally, the more consistent an opinion is with the record as a
whole, the more weight we will give to that opinion." 20 C.F.R. §§404.1527(d)(4),
416.927(d)(4).

Clark further contends that the ALJ failed to properly consider the opinions of the
consultative examiners, Drs. Smith and Brown, that her ability to stand and walk were
limited.  The Commissioner argues that the ALJ sufficiently incorporated Clark's
limitations in standing or walking by reducing the number of hours that she could stand or
walk to 6 hours each in an 8-hour workday, rather than a full 8 hours per workday.  The
Commissioner's argument is incorrect to the extent that it finds an explicit statement by the
ALJ that Clark was walking or standing 6 hours out of 8.  The ALJ did not explicitly state
this limitation in her assessment of Clark's residual functional capacity.  (Doc. #6, PageID
at 54-60).  But this does not assist Clark because the ALJ's finding that she could perform
"light" work was consistent with the conclusion that she was limited to walking and
standing 6 hours out of 8.  The Regulations define "light" work as requiring "a good deal

21

of walking or standing ....” 20 C.F.R. §404.1567(b).  The Rulings clarify that “the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour work.”  Social Sec. Ruling 83-10, 1983 WL 31251 at *5 (1983). Consequently, the ALJ’s limitation of Clark to light work included the limitation of 6 hours of walking or standing in an 8-hour workday.  *See id.*; *see also Stacey v. Comm'r of Social Sec.*, 451 Fed. App’x. 517, 519 (6th Cir. 2011) (“[A] state agency physician, reviewed Stacey’s medical records ... and determined that he can lift ten pounds frequently (twenty pounds occasionally) and can stand or walk for six hours out of an eight-hour work day.  These physical restrictions match the Commissioner’s definition of ‘light work.’”). Furthermore, neither of the two medical sources Clark points to – Drs. Smith or Brown – support the inclusion of more stringent walking or standing limitations than the ALJ identified.  Dr. Smith did not specify the degree of impairment in standing or walking; Dr. Brown opined only that Clark was “mildly impaired” in these abilities.  (Doc. #6, PageID at 356, 421).  Furthermore, Dr. Sargone had the opportunity to review the opinions of Drs. Smith and Brown and he also concluded that Plaintiff could perform a range of light work, including about 6 hours of standing/walking and 6 hours of sitting per 8-hour workday. *Id*., PageID at 428-35.

Accordingly, for all the above reasons, Clark’s challenges to the ALJ’s review and weighing of the medical source opinions lack merit.

### B.    Credibility

Clark contends that the ALJ's findings about her credibility and daily activities "are without reasonable evidentiary support."  (Doc. #8, PageID at 534).  She reasons, in part, that the ALJ uses "semantics to manufacture an inconsistency and at worst mischaracterized the record."  *Id*., PageID at 535.  Clark also challenges the ALJ's finding that her credibility is unsupported by the objective medical evidence and her daily activities.

"An ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility."  *Walters v. Comm'r of Social Sec*., 127 F.3d 525, 531 (6th Cir. 1997).  But, the ALJ's credibility findings "must also be supported by substantial evidence."  *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (citation omitted); *see Felisky v. Bowen*, 35 F.3d 1027, 1039 (6th Cir. 1994). When assessing a claimant's credibility, ALJs must look at both the objective medical evidence and other evidence.  *See* 20 C.F.R. § 404.1529(c); *see also Felisky,* 35 F.3d at 1039.

In accordance with the Regulations, the ALJ discussed Clark's testimony regarding the frequency and intensity of her symptoms, her medications and side effects, and her treatment history.  (Doc. #6, PageID 54-59).  The ALJ concluded that objective medical evidence did not support Clark's assertion that she had not been able to work since her disability onset date.  Substantial evidence supports this conclusion.  For instance, x-rays in

June 2009 revealed normal right knee and normal right shoulder.  *Id.*, PageID at 426.

Clark's May 2010 right-shoulder MRI revealed essentially mild findings.  (Doc. #6,

PageID at 501).  A MRI of Clark's right knee in May 2010 showed "moderate

chondromalcia in the medial compartment, but no acute ligament tear.  *Id.*, PageID at 504.

A MRI of her cervical spine in May 2010 showed "mild to moderate central narrowing at

C5-6 related to a broad-based disc osteophyte complex and minimal grade 1 retrolisthesis

of C5 on C6.  The disc osteophyte complex extends to the foraminal region bilaterally with

moderately severe right and moderate left foraminal narrowing."  (Doc. #6, PageID at

506).  The MRI report also noted no focal disc herniation or central or foraminal narrowing

at the remaining levels.  *Id*.

Clark alleges that the ALJ did not reasonably account for her swelling (edema) in

assessing her credibility and residual functional capacity.  To the contrary, the ALJ

considered Clark's allegations that she was unable to work due to issues including leg

swelling as well as her testimony that she must elevate her legs while sitting.  *Id.*, PageID

at 54.  The ALJ also considered that Dr. Ahmed found "generally no more than trace

edema" during his examinations.  *Id.*, PageID at 59.

Records from examining sources fail to show more than minimal edema.

Examinations showed no edema on January 31, 2007 and January 4, 2010; records on April

23, 2007 fail to document any edema; Clark reported swelling to Dr. Smith on September

17, 2007, but Dr. Smith's examination did not identify swelling; and, Dr. Brown's

24

examination in June 2009 identified only 1+ edema her Clark's knees.  *Id*., PageID at 313-

14, 316, 354, 356, 419, 466.  Although Dr. Ericksen's records document some complaints

of edema, he does not specify severity.  (Doc. #6, PageID at 462, 507, 509, 511).  He

indicated that edema was better on February 8, 2010 and June 24, 2010, while Clark had

"some" increased swelling on July 15, 2010 and "some" swelling on September 2, 2010.

*Id*., PageID at 462, 507, 509, 511.

There is no question that Clark has experienced swelling at times, but the

longitudinal record does not support the severity of swelling or the resulting functional

limitations she describes.  Instead, substantial objective evidence and examination results

support the ALJ's finding that Clark generally had minimal, or no more than trace,

swelling.

The ALJ also gave proper consideration to Clark's impairment of obesity.  At Step

two of the sequential evaluation, the ALJ identified obesity as one of Clark's severe

impairments, noting that her Body Mass Index was 46.3.  (Doc. #6, PageID at 51).  The

ALJ correctly recognized at Step three that the Commissioner's Listings do not contain a

separate Listing for obesity and that obesity alone can be disabling "and may dramatically

worsen other medical conditions."  *Id*., PageID at 53 (citing Soc. Sec. Ruling 02-01p, 2002

WL 34686281.  The ALJ also considered, but rejected, whether obesity caused Clark to be

unable to ambulate effectively such that it could substitute for a "major dysfunction of a

joint(s)..." under the Listings.  In this manner, the ALJ fully considered Clark's impairment

25

of obesity at Step three.  Additionally, given the ALJ's consideration of obesity at Steps two and three, the ALJ's further consideration of the medical sources opinions of record – each of whom considered obesity – shows that she adequately considered the impact of obesity on Clark's residual functional capacity.  *See Bledsoe v. Barnhart*, 165 F. App'x. 408, 412 (6th Cir. 2006).

The ALJ also properly discussed an inconsistency between Clark's descriptions of her daily activities.  (Doc. #6, PageID at 54-57).  "Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence."  *Walters*, 127 F.3d at 531.  The ALJ noted Clark's testimony that she would usually lie in bed and watch television all day, that she must elevate her legs while sitting, and that she did "very little" housework, while her husband did all of the cooking and shopping.  (Doc. #6, PageID at 54).  By contrast, the ALJ considered Clark's previous acknowledgment that she completed her own grooming and hygiene and shared cooking, grocery, shopping, and light housework with her husband.  *Id*., PageID at 57.  She also acknowledged that, at times, she cared for her husband, who is disabled due to sarcoidosis.  *Id*., Page ID at 74, 265.  While Clark testified that her limitations were more severe than the ALJ credited, the ALJ properly considered Clark's previous description of activities of daily living as a basis for discounting her testimony.

Accordingly, the ALJ's decision concerning Clark's credibility is subject to judicial

26

deference.  *See Walters,* 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir.1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached.").

## IT IS THEREFORE RECOMMENDED THAT:

1.      The Commissioner's non-disability finding be affirmed; and

2.      The case be terminated on the docket of this Court.

April 28, 2014

    s/Sharon L. Ovington
    Sharon L. Ovington
    Chief United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F).  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981).